THE TEXAS COMPANY (P. R.), INC., Plaintiff and Petitioner, v. MUNICIPALITY OF MAYAGÜEZ, AND TREASURER OF THE MUNICIPALITY OF MAYAGÜEZ, Defendants and Respondents.

No. 12493. Submitted May 27, 1959.—Decided August 25, 1959.

Beverley, Castro and López Baralt and R. Rodríguez Lebrón for petitioner. A. Nazario Janer for respondents.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The Municipality of Mayagüez levied on the plaintiff, The Texas Co. (P. R.) Inc., a municipal license tax for the year 1956–1957, for the amount of $4,240.52, under the provisions of Act No. 26 of March 28, 1914—21 L.P.R.A. §§ 621–639. At the request of the Municipality, the company paid under protest the amount of $2,120.26 corresponding to the quarterly instalments of the tax due on January 1

and April 1, 1957, and then filed a complaint claiming refund of the sum paid. Plaintiff alleged that it has "an establishment devoted to the wholesale of oil products within the Municipality of Mayagüez"; that at the commencement of the year 1956 the tax in question was levied upon it, and that it should be refunded because neither at that time nor now there existed or exists any legal authority to collect the tax since its business is not included in any of the three groups mentioned in § 2 of Act No. 26 of 1914, authorizing the license tax. The complaint is dated May 6, 1957. At the request of plaintiff itself, there being no controversy of fact, the Superior Court, Mayagüez Part, entered a summary judgment upholding the tax levied and, consequently, denying the refund of the sum paid. Hon. Judge Ángel Fiol Negrón was of the opinion that since plaintiff had, as it stated itself, an establishment devoted to the wholesale of oil products, it was subject to the license tax under the provision of "Wholesale stores" contained at the commencement of Group A of § 2 of the aforesaid Act of 1914, citing the cases of *Mun. of San Juan* v. *P. R. Coal Co.*, 28 P.R.R. 245 and *A. J. Tristani* v. *Municipality*, 76 P.R.R. 710, and refusing to apply *Cervecería India* v. *Municipality*, 77 P.R.R. 91, because it considered the latter distinguishable. Feeling aggrieved, plaintiff filed the present appeal.

It maintains that the cases of *P. R. Coal* and *Tristani* have been implicitly overruled by the *Cervecería India* case, and particularly by the judgments rendered in the cases of *The Shell Co.* v. *Báez*, No. 11473 and *Esso Standard Oil Co.* v. *Báez*, No. 11534, decided without opinion on November 30, 1956, and it infers that the same has been overruled from the fact that in the last two cases, like in the present one, the enterprises in question had establishments which sold oil products at wholesale and, yet, we reversed the judgments appealed from and set aside the tax levied on the same grounds of the *Cervecería India* case. Plaintiff then concludes that the only

possible explanation is that the Court is now of the opinion contrary to its former ruling, that the phrase "Wholesale stores" at the commencement of Group A of § 2 of the License Tax Act is applicable only to the wholesale establishments of such businesses as are expressly mentioned in said group, and that the statute does not authorize the tax on such other wholesale establishments of businesses not specifically enumerated, as in the case of oil products.[1]

Section 2 of Act No. 26 of March 14, 1914, ordinarily known as the License Tax Act, provides as follows:

"Section 2.—That the businesses or industries upon which the taxes herein provided may be levied, shall be the following:

"*Group A.*—Wholesale stores, mixed stores, dry good stores, fancy grocery stores, grocery stores, provision stores, furniture stores, pharmacies, drug stores, hardware stores, hat stores, shoe stores, men's furnishing stores, book stores or book binding establishments, bazaars, bicycle or bicycle supply stores, notion and trinket stores, cafés, hotels, restaurants, jewelry stores, establishments for the sale of automobiles or automobile supplies or for the storage or repair of automobiles, stationery stores, confectionery stores, candy stores . . ." [the enumeration of businesses and products follows without mentioning oil products.]

We established the meaning and contents of the phrase "Wholesale stores" for the first time in *Mun. of San Juan* v. *P. R. Coal Co., supra,* decided on March 30, 1920, in view of the contention, similar to plaintiff's, that the wholesale business of mineral coal of the company was not included

---

[1] Although under its own deductions as to the effect of the judgments rendered in cases Nos. 11473 and 11534 of *The Shell Co.* and *Esso Standard Oil Co.,* plaintiff maintains that the judgment rendered in this case should be reversed, it rather urges, in view of the many cases which it alleges are pending in the inferior courts involving the same question, that we should definitively clarify and dissipate the doubt as to which shall be the correct interpretation of the phrase referred to, whether "Wholesale stores" covers all establishments where articles of any kind are sold at wholesale, or whether on the contrary, it is limited to those businesses or products specifically enumerated in Group A.

in the Act and therefore not taxable. At that time we said ::
—28 P.R.R. 245–46—

"It is conceded that the defendant does not fall within group 'B' or Group 'C' specified later on under section 2 and that the only designation at all applicable to it is the first words of group 'A,' namely, 'Wholesale stores.' The court below found that the words of the Spanish text *'Establecimientos al por mayor'* only meant wholesale provision stores, if one took their ordinary popular meaning, and that tax laws should be construed strictly. Now, the English text is subject to no such limitation. 'Wholesale store' means any kind of a store where articles of any kind are sold at wholesale. The text in English is unmistakable as pointing out, first, 'wholesale stores,' then 'mixed stores,' meaning those that partake of the character of wholesale and retail, and then enumerating a number of retail stores and other establishments. In 1914 the Legislature was still partially composed of members whose native tongue was English. The treasurer was such a person and usually had a hand in such laws. The English text makes the law clearer, but to our minds the Spanish text is the generic way of describing an establishment where goods are sold at wholesale. . . .[2]

" 'Wholesale stores' in English would perhaps not ordinarily or popularly mean a coal yard, but taken in conjunction with the Spanish text 'wholesale stores' means any establishment where coal is stored. . . .

"We have no doubt from the reading of both texts that the Legislature meant to name all places where goods were sold at wholesale, and both texts should be read. [Citations.] Nor have we any doubt, if the Spanish text be taken alone, that the Legislature meant to include all establishments where goods were sold at wholesale. The popular meaning must yield to the literal meaning when the words 'wholesale stores' are taken in apposition to the words 'mixed stores' and the enumeration of establishments that in the main are not wholesale."

As may be noted, we held that the provision "Wholesale stores" constituted a taxable item in itself, no matter

---

[2] In effect, one of the Legislative Houses was composed of 6 North Americans and 5 Puerto Ricans when Act No. 26 of 1914 was enacted. The Governor who approved the Act was also a North American.

the product offered for sale, irrespective of the list of businesses and articles expressly enumerated.

The interpretation of the License Tax Act made in that case created a state of law concerning the power of taxation of the municipalities which was not questioned again, at least not in this Court, for 34 years. The Legislative Assembly never rejected by amendment to the statute such state of law. In *A. J. Tristani* v. *Municipality, supra*, decided June 22, 1954, for the second time we faced the allegation that the business of that taxpayer was not included in Act No. 26 of 1914, and therefore it was not taxable. Without further argument we said, speaking through our distinguished brother Mr. Pérez Pimentel:—76 P.R.R. 710, 719—

" . . . We must first ascertain whether appellant's business, contrary to its contention, is covered by the Municipal License Tax and, hence, is subject to municipal taxation. The question has already been adversely decided. Under the 'wholesale store' of group 'A' of the License Tax Act of 1914, municipalities have a right to levy license taxes upon all establishments in which any article is sold at wholesale. *Mun. of San Juan* v. *P. R. Coal Co.*, 28 P.R.R. 245. Appellant's business—wholesale of cigarettes and chewing gum—comes within the term 'wholesale store'."

Scarcely a month and a half later, on August 9, 1954, we decided the case of *Cervecería India* v. *Municipality*, 77 P.R.R. 91.[3] The issue was about an industry that sells its product at wholesale in its own factory or plant. The Superior Court sustained the license tax which was levied on the Cervecería on the ground that the business was included in the provision "wholesale stores" of Group A. We reversed the judgment and again stated, speaking through Mr. Justice Pérez Pimentel, that even if the factory or plant of the Cervecería India constituted an *industrial establishment* within the ordinary and usual meaning of the words, this in itself

---

[3] *Cf.*: *Yabucoa Sugar Co.* v. *Municipality*, 44 P.R.R. 336, which to a certain extent already insinuates this doctrine.

did not mean that the factory was included in the License Tax Act, and we then stated that the term *"establishment"* used in the Act refers to those that sell "wholesale" and, *that the term "wholesale" does not apply to industries but to commerce,* since there is no such thing as wholesale or retail industries; they are either large or small depending on the volume of production. We referred to the definition of "wholesaler" and we concluded that the term "wholesale establishment" *included commercial but not industrial establishments.* In the light of the same Act we further said that it was not the legislative intent to include in the term of wholesale establishments the phase of the beer industry consisting in the wholesale of the processed product, first, because establishments and businesses enumerated in the act such as mixed stores, dry goods, provision stores, furniture stores, pharmacies, etc., indicated that it referred to *commercial establishments;* second, because the industries are listed under Group B of § 2 and beer is not mentioned; and furthermore, because if all the industries just because they sold their products wholesale were included in the phrase "Wholesale stores," the specific enumeration of the industries in the Act would have been unnecessary. And as a final expression of the scope of what we decided in that case, near the end of the opinion we stated that the License Tax Act did not contemplate that an industry engaged in the production or manufacture of certain articles should have two independent phases, namely, manufacture and sale. That in enumerating the industries subject to taxation, the Act assumed that they would produce salable articles, and as the tax is levied on the basis of the volume of business transacted during the calendar year and "volume of business" means the gross receipts in any business or industry, it is crystal-clear that the industry has no gross receipts if it does not sell the products manufactured or produced by it. In other words, we held that *industries* not included in the License Tax Act did not become taxable as such under the term "Whole-

sale stores" merely because they sell their product at whole-sale, because the term covers commercial and not industrial establishments, and the Act does not contemplate sale as an independent phase of manufacture. There is nothing in this opinion incompatible or in conflict with the decision in *P. R. Coal* and *Tristani* on entirely different issues and facts and, hence, it should not be concluded that these cases have been impliedly overruled by the *Cervecería* case, nor is there any reason or justification to overrule them expressly. Perhaps certain language used in 77 P.R.R. 96— " . . . The License Tax Act, we have seen, enumerates the businesses and indus-tries which may be licensed by a municipal corporation, and the enumeration, if on the whole such appears to be the legis-lative intent, is exclusive and the other industries or busi-nesses not embraced in the enumeration are therefore excluded from the law . . . . " —might lead one to agree with plain-tiff, that contrary to what was already decided we took the view that not business or product not specifically stated in the Act is taxable. But the former statement should be construed in the light of the whole context of the opinion, of the argu-ments immediately preceding, as well as of the facts involved. Also in harmony with the legislative intent, but as it had already been established by the case law. And if there remains any doubt as to the meaning of that term, it suffices to say that on June 22, 1955, almost a year after the decision of *Cervecería India*, we decided, by per curiam,[4] the cases of *The Shell Co. (P. R.) Limited* v. *Lespier*, Cases Nos. 11,284 and 11,285 in which the same contention that the business of the Shell—the sale of gasoline, oil, grease, etc.—by whole-sale was not included in the License Tax Act, and once more we unconditionally approved the early interpretation given to the Act in *P. R. Coal Co.*, stating that: "After the date in which appellant filed his brief in these cases, this Court rendered the opinion in the case of *A. J. Tristani*

---

[4] They are not published in volume 78 of the Reports.

*Sucres., Inc.* v. *Municipality of Mayagüez,* decided on June 22, 1954, in which the essential issues raised herein were decided against appellant. In said case we ratified that of *Mun. of San Juan* v. *P. R. Coal Co.,* 28 P.R.R. 245. Consequently, the business of the appellant is included in the Municipal License Tax Act, under the heading of 'wholesale stores.' The first error was not committed."

This was the situation when on November 30, 1956 [5] we rendered judgments without opinion in *The Shell Co.* v. *Báez,* and *Esso Standard Oil Co.* v. *Báez,* Nos. 11,473 and 11,584 respectively, reversing, on the basis of the *Cervecería India* case, the judgments of the Superior Court sustaining the license tax levied on said companies, which, as in the case at bar, were engaged in the wholesale of oil products. If, as we previously stated, there was no reason or justification for expressly overruling the *P. R. Coal* and *Tristani* cases, or for impliedly considering them to have been overruled by the *Cervecería* case, and there being no conflict between those decisions, with greater reason it should be concluded that the judgments of November 30, 1956 did not impliedly overrule said cases either, more so, if it is considered that unlike the issue involved in *Cervecería India,* the latter cases raised the same question of law concerning the interpretation of the Act stated in the present case. The only logical conclusion we can reach and which we do, because an error of ours should not be perpetuated nor create rights—*cf.* Opinion of Mr. Justice Snyder, Mr. Justice Ortiz, and Mr. Justice Belaval in *Agosto* v. *Javierre,* 77 P.R.R. 444, 445–46—is that on November 30, 1956 we unduly reversed the judgments appealed from in the cases of *The Shell* and *Esso Standard Oil Co.,* applying to those commercial establishments the grounds of the *Cervecería India* case. There could not have been any intention of overruling the principle of law estab-

---

[5] Amended on December 12, 1956, to include interest.

lished in *P. R. Coal Co.*, which had been recently ratified twice, clearly and without room for doubt.

But aside from the question of intent or purpose and of the views contemplated as to the effect of the judgments rendered in Cases Nos. 11,473 and 11,534, upon making an independent re-examination of the question of law involved in this case, we should state that we have not found any argument of weight to modify the interpretation we gave in 1920 to the License Tax Act and substitute it for the interpretation that petitioner suggests. We would not be justified either, in the absence of a showing that the doctrine is clearly erroneous and untenable at law, in altering said interpretation to adopt a more restrictive one against the taxing power of the municipalities, in the light of the clear and precise declarations made by the Legislative Assembly from time to time for the purpose of strengthening rather than weakening the taxing power of the municipal governments granted by the License Tax Act.[6]

The doctrine laid down in *Mun.* v. *P. R. Coal Co.*, is once more ratified to avoid any confusion that might have arisen as to the effect of the judgments of November 30, 1956 in Cases Nos. 11,473 and 11,534, in the light of our ruling in *Cervecería India* v. *Municipality, supra,* and it should be clear that under the provision of "Wholesale stores" at the commencement of Group A of § 2 of License Tax Act No. 26 of March 28, 1914, every *commercial* wholesale establishment pays tax, whatever product or article is sold therein.

The judgment under review shall be affirmed.

---

[6] If not, see Act No. 437 of May 15, 1951, amending § 99 of the Internal Revenue Act of 1925; particularly its Statement of Motives; Act No. 54 of June 7, 1955 and its Statement of Motives, in force since the fiscal year 1955–56; Act No. 44 of June 18, 1958; § 82 of Act No. 2 of January 20, 1956—Excise Act of Puerto Rico—; and Act No. 75 of June 25, 1959, amending said § 82. Also see § 18 of Act No. 99 of May 15, 1931.